NicholsON, C. J.,
delivered ■ the opinion of the court.
Johnson, being a trader in beef cattle, and residing in Morgan county, went to the house of Goad, who lived in Scott county, and asked him whether he had any cattle for sale. Goad said, “he had some as good and fat beef cattle as there were in the country.” They went out to look at the cattle, but could not find all of them. They saw a large, fine steer, which Johnson agreed • to take at $32.50, and some others at $14 per head. Goad represented the other cattle to be in as good condition as those he had just shown and sold to Johnson at $14 per head. Goad Avas to deliver the cattle the next day at Mr. Cross’s, some four or five miles distant from Goad’s. The next morning Goad delivered the cattle, fourteen in number, to Johnson, at Cross’s. He looked at them and pronounced them satisfactory, except one, which he thought not quite so fat and large as the others, AA'hich one he agreed to take at $13. The parties then settled, when Johnson paid Goad some money *343 and executed to him his due-bill for $72 for the balance.
Suit was brought on this due-bill, on which there was a judgment for Goad. Upon appeal to the Circuit Court and a trial there, Johnson had a verdict and judgment, whereupon Goad appealed to this court.
Johnson resisted the payment of the due-bill, because on the day after he received the cattle, in driving them homeward, several of them became sick and had to be left, two of them dying, and all so left having been lost to him. There was proof tending to show that the disease, known as milk sickness, had prevailed among the cattle in some localities in Goad’s neighborhood; and the inference sought to be drawn by Johnson was, that the disease, in its incipient stage, existed in the cattle when they were 'purchased by Johnson, and that he had a right to resist the payment of the due-bill for failure of consideration.
Upon the trial of the cause in the Circuit Court of Morgan county, the presiding Judge, amongst other things not excepted to, charged the jury as follows:
“You will look to the proof, and see whether or not the cattle were diseased. at the time of the sale and delivery; and if so, the defendant will be entitled to an abatement of the price to the amount of the value of the cattle so lost. If the disease of which they died, if at all, was contracted after the sale and delivery, then the purchaser would be the loser. Upon the. question, whether the disease was contracted before or after the sale, depends the whole of this part of the case.”
*344 The Judge charged also: “If you believe that the defendant informed plaintiff that he wanted the cattle for beef, and plaintiff sold the cattle for good beef cattle, they having the poison or elements of the disease in them at the time, plaintiff would be liable, whether he actually knew the cattle were so diseased or not; because it is a principle of law that when any person sells another property for a special use, the seller impliedly warrants the property to be suitable for the purpose for which it is purchased.”
It is insisted for plaintiff in error that the law is erroneously stated in this charge in several particulars.
1. The Judge states it to be the law, that when any person sells another property for a special use, the seller impliedlly warrants it to be suitable for that use. To apply this principle to the case as to which the charge was given, its meaning was, that if Johnson wanted to buy cattle for beef, and so informed Goad, and Goad thereupon sold him the cattle as good, fat beef cattle, there was an implied warranty by Goad that the cattle were good, fat cattle, fitted for beef. This proposition is stated too broadly; it is subject to a material qualification. The true rule is, that “if the buyer purchases upon the skill or judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose; otherwise, if the buyer purchases on his own judgment.” This rule is laid down by Tindal, C. J., in Brown v. Edginton, 2 M. & G., 279, to be the result of all the authorities. See Benjamin on Sales, 488, where all the authorities are col *345 lected. He says, at p. 479: “So far as an ascertained specific chattel, already existing, and which the buyer has inspected, is concerned, the rule of caveat emptor admits of no exception by implied warranty of quality:” for which he cites Parkinson v. Lee, 2 East, 314; Chanter v. Hopkins, 4 M. & W., 64, etc.
Mr. Kent, vol. 2, 478, after stating the distinction between the implied warranty as to title and as to quality of personal property, quotes the case of Leixas v. Wood, 2 Cain’s Kep., as laying down the general rule of law correctly: “That if there is no .express warranty by the seller or fraud on his part, the buyer, who examines the article himself, must abide by all losses arising from latent defects equally unknown to both parties.”
The distinction is well established between those cases in which the chattel is- sold upon description by the seller, and those in which the sale is made upon inspection and examination of the buyer. In the former class of cases there is an implied warranty that the chattel is such as the seller described it to be. In the latter class the buyer inspects and examines and judges for himself, and if he requires no express warranty, and there is no fraud on the part of the seller, the rule of caveat emptor applies. To have stated the principle of law applicable to the case correctly, the Circuit Judge ought to - have told the jury that if Goad knew that Johnson wanted the cattle for beef, and he sold them to him for beef cattle upon his own inspection and judgment, and without any fraud on the part of Goad, then Johnson would pur- *346 cbase at his own risk as to the quality of the cattle for beef.
2. The Circuit Judge told the jury that the case turned upon the question whether the cattle were affected with the seeds or elements of the disease before or after the sale and delivery. According to this view of the law, if the buyer and the seller were both ignorant of the existence of the disease in the cattle, and both inspected and pronounced them satisfactory as to quality at the time of the sale, yet, if they were in fact then diseased, the loss should fall on the buyer. It will be found upon examination of the authorities that this rule is only applicable to the sale of provisions for consumption, and that it rests on statutory provisions, and not on the doctrine of implied warranty.
Blackstone, vol. 3, p. 166, says that in contracts for provisions it is always implied that they are wholesome; and that if they be not, an action on the case ftr deceit lies against the vendor. But, as remarked by Mr. Benjamin, p. 493, this proposition clearly assumes knowledge of the unwholesomeness • on the part of the vendor, for that knowledge is an essential element in the action of deceit as settled in Peasely v. Freem, 3 T. R., 51. After a full examination of the cases, Mr. Benjamin says: “It results clearly from these authorities that the responsibility of a victualler, vintner, brewer, butcher, or cook for selling unwholesome food does not arise out of any contract or implied warranty, but is a responsibility imposed by statute that they shall make good any dam *347 age caused by their sale of unwholesome food. The case of selling unwholesome provisions for consumption, therefore, furnishes no exception to the rule that where there is no deceit or fraud on the part of the seller, and where the buyer inspects and buys upon his own judgment, he buys subject to the rule of caveat emptor, even if there was a latent defect in the chattel sold, equally unknown to seller and buyer, and hidden from detection by either: 2 Kent, 478. The question, therefore, whether the cattle contracted the disease before or after the sale waá not, as charged by the Judge, the material question in the case.
For the errors in the charge indicated the judgment is reversed.